United States District Court
Northern District of Alabama

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Robert Michael Evans<br><br>Defendant. | Case No. 5:08-cr-242-009 |

**Defendant's Renewed Motion for Compassionate Release
Under 18 U.S.C. § 3582(c)(1)(A)**

Defendant, Robert Evans ("Evans"), through his attorneys, respectfully submits this Defendant's Renewed Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A). Evans seeks compassionate release in the form of an order reducing his sentence based on his serious physical and medical conditions that substantially diminish his ability to provide self-care. Evans has obtained an independent and qualified medical expert to provide an opinion regarding his conditions in addition to the materials previously submitted. The Court should grant Evans compassionate release consistent with the independent medical judgment discussed below.

## I. Background

As amended by the First Step Act, the Court has jurisdiction under § 3582 to determine whether "extraordinary and compelling reasons" warrant a sentence reduction after consideration of sentencing factors and the Sentencing Commission's policy statement on reduction of sentence in U.S.S.G. § 1B1.13. Because Mr. Evans'

circumstances fall within the Sentencing Commission's standards for reduction of sentence, Mr. Evans requests the Court grant the requested sentence reduction to time served, or to probation with or without a condition of home confinement.

The Court may order "compassionate release" for "efficient" medical treatment even if the BOP could offer good care. However, in Mr. Evans' case the BOP cannot offer efficient and necessary treatment and Mr. Evans cannot provide adequate self-care in a correctional facility as evidenced by his history of infections and deteriorating health.

**A. First Step Act of 2018**

On December 21, 2018, the President signed the First Step Act into law. Among the criminal justice reforms, Congress amended 18 U.S.C. § 3582(c)(1)(A) to provide the sentencing judge jurisdiction to consider a defense motion for reduction of sentence when "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" First Step Act of 2018 at 119.

On May 23, 2019, Evans requested BOP to move, under 18 U.S.C. § 3582(c)(1)(A), for a reduction of his sentence. (May 23, 2019 Letter to Warden, attached as **Exhibit A**). The warden of FCI Talladega received Mr. Evans request on May 23, 2019, but the BOP did not render a decision in 30 days. (Ex. A). Pursuant to the authority provided by the First Step Act, Mr. Evans is now bringing his request for a sentence reduction directly to this Court.

## II. Sentence Reduction Authority Under 18 U.S.C. § 3582(c)(1)(A).

As part of the First Step Act, Congress removed a major obstacle from judicial review of sentences to determine whether medical conditions of a defendant and the ability to provide self-care in a correctional facility made a sentence reduction "sufficient, but not greater than necessary," under 18 U.S.C. § 3553(a). Under the Act, this Court is afforded jurisdiction to make the § 3553(a) determination of whether Evans' over eleven years in prison,[1] in light of his serious physical and medical condition from which he will not recover and diminished ability to provide self-care, is "sufficient, but not greater than necessary," to accomplish the goals of sentencing.

This Court has discretion to reduce the term of imprisonment imposed in this case based on § 3582(c)(1)(A)(i), which states in relevant part that the Court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction[.]" Title 28 U.S.C. § 994 authorizes the U.S. Sentencing Commission to define "extraordinary and compelling reasons."[2]

Application Note 1 to § 1B1.13 to the Sentencing Guidelines defines "extraordinary and compelling reasons" as follows:

> 1. **Extraordinary and Compelling Reasons**.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

---

[1] Evans has been in custody since June 2008. (Doc. 119)

[2] *See* 28 U.S.C. § 994(t) "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of [T]itle 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

(A) **Medical Condition of the Defendant**.—
. . .
    (ii) The defendant is—
        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or
        (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
. . .
(D) **Other Reasons**.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, comment. n.1(A)(i) (emphasis added).

While the Sentencing Commission Policy Statement on reductions of sentence lists three categories of "extraordinary and compelling reasons" there is no restrictive list of combination of factors that can warrant release. U.S.S.G. § 1B1.13, comment. n.1(A)–(D). Moreover, the reason for seeking a reduction in sentence "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, appl. Note 2.

### III. Evans' History of Serious Physical and Medical Conditions.

#### A. Massive Car Wreck Causes Irreparable Injuries

In 2003 prior to his incarceration, Mr. Evans was injured in a major motor vehicle accident where he was ejected from the vehicle resulting in a right pelvic

Defendant's Renewed Motion for Compassionate Release
Under 18 U.S.C. § 3582(c)(1)(A)                                                                    Page 4 of 17

fracture, right femur fracture, left tibia fracture, right facial orbital fracture, bilateral foot drop, permanent spinal cord injury, urinary incontinence, and vision problems. (BOP Medical Records, attached as **Exhibit B**, at 2-4[3], 5-19, and 41-44).

The injury to Evans' spinal cord and the nerves of his pelvis caused permanent significant weakness in his legs and he requires a walker or wheelchair to ambulate. (Ex. B, at 2-3, 5-19, and 41-44). The injury also causes urinary incontinence requiring Mr. Evans' to wear Depends (or adult diapers). Evans has significant muscular wasting and disuse atrophy in his buttocks and legs that cannot be reversed. (*Id.*).

### B. Medical Conditions Worsen

The trauma to Mr. Evans' right eye required a lens replacement and his vision continues to be poor because his pupil is misshaped and nonreactive. His other medical diagnoses include hypertension, type II diabetes, esophageal reflux, outlet dysfunction constipation, anisometropia, and foot anomalies. (Ex. B, at 26). According to medical records, he takes approximately five medications daily. (Ex. B, at 27).

Evans' injuries and resulting lack of mobility have caused significant muscle atrophy in his buttocks and legs and, since his incarceration, he has a history of multiple severe decubitus ulcers (pressure ulcers) on his buttocks requiring multiple debridements, medications, and hospitalizations. (*E.g.*, Ex. B, at 28–32, 22).

### C. 2-Year Strep infection in bones threatens Evans' life

---

[3] All of Exhibit B contains Bates Numbered pages which can be found in the bottom right-hand portion of each document. The Bates Numbering began with "Evans, R. 00001" for all medical records provided previously to Evans by the BOP.

Evans' medical and physical condition is so serious that he was even hospitalized for one month in 2011 because he developed a stage 4 chronic left buttock ulcer infected with group G-streptococcal (commonly called a "strep" infection) that <u>he had for almost two years</u> and necrotizing myofasciitis from the buttock to groin requiring "vast debridement." (Ex. B, at 20-22). In fact, the infection was so severe that it reached all the way to Evans' bones. (*Id.*) Presenting to the emergency department with a two-year old pressure ulcer, abscess, sepsis, cellulitis covering one's entire thigh, and necrotizing fasciitis should never happen and should have been addressed well before his health deteriorated to the point of requiring hospitalization for one month. (Ex. B, at 22-25)

Evans has experienced repeated medical complications since his incarceration, including multiple decubitus ulcers (even as recent as March of 2019), urinary tract infections, wounds on the feet, cellulitis and abscesses of the leg and groin. (Ex. B, at 28–32). The nature of Mr. Evans' serious medical conditions coupled with the effects of incarceration and lack of adequate medical treatment and physical therapy will only cause his physical condition to worsen as he ages. Without proper physical therapy, Evans will lose what little mobility he has left.

### IV. Independent Medical Expert Opinion

As the Court is already aware, the United States maintains that Mr. Evans does not meet the applicable criteria for compassionate release and that a reduction in sentence is not warranted. (*See* Dkt. 1225). In light of the parties' respective positions, Mr. Evans sought the assistance of a third-party medical expert to review

his case. Mr. Evans provided the United States with the written findings of Doctor Robert Snow on August 30, 2019. Doctor Snow provided his professional medical opinion that Mr. Evans' conditions satisfy the criteria for compassionate release.

A complete copy of Dr. Snow's report is attached here as **Exhibit C**. Dr. Snow's qualifications are detailed extensively in his CV which is attached to this motion along with Exhibit C. Evans believes that Dr. Snow's report speaks for itself, but will highlight a few of the relevant findings:

- Dr. Snow reviewed Mr. Evans' medical records which were current through April 2019[4];

- Dr. Snow reviewed all of the BOP medical records that the Government relied upon for its prior opposition;

- Evans has suffered from the same or similar osteomyelitis on his buttocks since at least 2011 (Exh. C at 7);

- Evans' wound is so severe that it has caused him to develop life-threatening infections and be admitted to the hospital in April 2019 (Exh. C at 6);

- Evans still has an abscess wound that is approximately 6 centimeters in depth from the outside of his skin to the interior of his wound;

- Evans will "never be able to heal his…ischial pressure ulcer without deep surgical debridement of the ischial tuberosity likely needing to remove it along with some type of rotational flap," (Exh. C at 6);

- After surgery, Evans will require a "prolonged course" of intense antibiotics and to be placed on a "specialty bed…for at least six weeks," (Exh. C at 7);

- During those six weeks, Evans will be "totally bed bound," and even after that time he will be at a high risk of recurrence due to his paralysis (Exh. C at 7);

- It is "clear that [Evans] is suffering from a serious physical and medical condition that is potentially life threatening." (Exh. C at 7).

---

[4] The BOP has copies of all of Evans' medical records through the date this renewed motion was submitted.

According to Dr. Snow, it is his "definite medical opinion," that Evans' conditions "cannot be adequately treated," while he is still incarcerated. (Exh. C at 9). Dr. Snow's definite medical opinion is that Evans' conditions "substantially diminish Evans' ability to provide self-care…" (Exh. C at 9).

Evans has nothing to hide. Dr. Snow's report was already provided to the BOP weeks ago. (*See* JSR, Dkt. 1225). Dr. Snow is not a paid gun-for-hire. Dr. Snow took on Evans' case for no fee. Dr. Snow has no incentive to exaggerate Evans' conditions beyond upholding the Hippocratic Oath.

Dr. Snow is "happy to discuss Mr. Robert Evans['] case or situation with the court *at any time if contacted.*" (Exh. C at 9) (phone number in report)(emphasis added).

## V. Evans' "Extraordinary and Compelling Reasons" Warrant A Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A).

### A. Evans' Serious Physical and Medical Conditions Present "Extraordinary and Compelling Reasons."

Evans easily meets the threshold requirement of "extraordinary and compelling reasons" warranting a reduction in his sentence to time served, or in the alternative, probation with or without home confinement because he has serious physical and medical conditions that he will never recover from and he has substantial diminished ability to provide self-care in a correctional facility environment within the meaning of the Application Note 1(A)(ii) of U.S.S.G. § 1B1.13.

As evidenced by Mr. Evans' documented complicated medical history, he has physical and medical conditions that he will not recover from. (*See supra*, Section IV).

His permanent disability, decreased mobility, muscle atrophy, and other medical diagnoses including urinary incontinence, diabetes, and hypertension make Evans' particularly susceptible to infection and illness. Without proper monitoring, treatment, and therapy, Mr. Evans will continue to be at constant risk for further infections and will continue to experience loss of his mobility and strength.

A correctional facility environment simply does not provide the safe and sanitary conditions required to manage Mr. Evans' conditions. For example, a pressure ulcer should never progress to the state that Mr. Evans' experienced in 2011 and 2012—that alone is a clear indication that Mr. Evans is not able to obtain the medical care and attention he needs. (Exhibit B, pp. 20-25). Moreover, Evans has continued to suffer from pressure ulcers and other infections and cannot receive adequate treatment while incarcerated. Mr. Evans complained for months about the need for something sanitary to sit on while he showered to prevent further infection to his buttocks (Ex. B, at 33, 34, 35, 36) and experienced delays in seeking the necessary consultations to address his wounds. (Ex. B, at 37-38, 40). While the BOP may argue that Mr. Evans' conditions can be adequately managed in a correctional facility, Evans' medical records tell a different story.

Until recently, judicial decisions addressing compassionate release were few and far between and only since the passing of the First Step Act are starting to shed light on the types of conditions that may qualify a person for release court recently disagreed. A May 2019 case from the Southern District of Indiana supports, by way of analogy, relief in Evans' case. *See U.S. v. McGraw*, 2019 WL 2059488 (S.D. Ind.,

May 9, 2019). In *McGraw*, the defendant was sentenced to life in prison for conspiracy to possess with intent to distribute methamphetamine and had served approximately 17 years in prison at the time of the opinion. *Id.* at *1, 5. McGraw requested compassionate release based on his deteriorating physical condition; McGraw used a wheelchair and walker to ambulate short distances, required portable oxygen, and has other conditions including diabetes, peripheral neuropathy, hypertension, emphysema, and chronic kidney disease. *Id.* at *2. His diabetes and hypertension were noted to be well-controlled during incarceration. *Id.* McGraw also "suffered from bouts of severe, uncontrollable diarrhea." *Id.*

    The Indiana federal district court made a number of relevant findings that are helpful in the case at hand. First, Application Note (1)(A)(ii) does not require that a person is "unable to function" in prison, only that they "have substantially diminished ability to provide self-care within the correctional facility environment." *Id.* at *3. Second, while McGraw's diarrhea was "stabilized" it was far from "resolved" and his other "conditions require frequent monitoring, evaluation, and treatment." *Id.* at *4. Third, while some of McGraw's conditions were "'controlled,' 'well-managed,' or 'stabilized'—these terms all indicate a need for active monitoring and treatment." *Id.* Fourth, McGraw was dependent on oxygen and a wheelchair. In sum, the court concluded that the defendant's "chronic, serious conditions, including those that are mitigated when properly treated by medical professionals, demonstrate a substantially diminished ability to provide self-care from which he is not expected to

recover. Extraordinary and compelling reasons therefore support a reduction in sentence." *Id*.

As in *McGraw*, Evans' medical and physical conditions are serious and chronic and constitute "extraordinary and compelling reasons" for reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A). Evans requires a walker or wheelchair to ambulate. His urinary incontinence, decreased sensation due to paraplegia, and decreased mobility will continue to present an increased risk of infection since he will not recover from those conditions. Further, Evans' other conditions like diabetes and hypertension, and his heightened risk for recurring pressure ulcers indicate a need for active monitoring and treatment. As demonstrated below, such a reduction is consistent with, and indeed supported by, the 18 U.S.C. § 3553(a) factors whose consideration is mandated by § 3582(c)(1)(A) "to the extent they are applicable."

**B.  With Full Consideration of the § 3553(a) Factors, Evans' Time Served Constitutes A Sentence Sufficient but Not Greater Than Necessary to Accomplish the Goals of Sentencing.**

Under § 3553(a), the extraordinary and compelling reasons warrant sentence reduction based on the characteristics of Evans, the need for an effective and supportive environment for medical care, and the accomplishment of the deterrence and public safety purposes of sentencing. The time already served has met many of the original sentencing goals.

Since Evans' sentencing, two of the § 3553(a) factors have changed and carry much more weight than at the time of sentencing: (1) "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and (2) "the need for the sentence imposed

. . . to provide the defendant with . . . medical care . . . in the most effective manner," 18 U.S.C. § 3553(a)(2)(D). Evans' "history and characteristics" have changed since his medical conditions and physical condition have undoubtedly become more complicated and the BOP cannot properly manage Evans' conditions. (*See supra*, Section IV).

In terms of his "history and characteristics" Evans is 43 years old and he has paraplegia and paraparesis in both lower extremities requiring the use of a wheelchair or walker to ambulate, vision problems, incontinence, hypertension, type II diabetes, esophageal reflux, and outlet dysfunction constipation. (*See supra*, Section IV). His spinal cord injury, coupled with his hypertension, urinary incontinence, and diabetes puts him at increased risk for significant progressive health issues as he ages.

### 1. Evans needs to be able to seek independent medical care

If Mr. Evans had any control over his medical care, he would not experience any delays in seeking medical attention, have access to regular and proper therapies to delay and prevent complications resulting from his disabilities, have access to proper monitoring of his conditions, and access to sanitary conditions to avoid risk of infection. Evans' health has and will continue to deteriorate, and he will require more assistance physically and medically over time. The Court must now consider the need "to provide [Evans] with . . . medical care . . . in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

The BOP is likely to claim it is capable of providing adequate medical care and treatment for Evans but given the unsanitary conditions in a correctional facility, history of infections, and unacceptable time it has taken to properly treat and resolve past health conditions that claim seems unlikely. Commentators have found significant issues with the BOP's provision of medical care and the medical staffing shortages, treatment delays, and medical personnel recruiting issues plaguing the BOP,[5] as well as the fact that treatment in the community would be more efficient, timely, and less burdensome on the BOP's medical costs weigh heavily in favor of reducing Evans' sentence.

As an inmate, Evans cannot select his doctor or seek out rehabilitation services. If granted compassionate release, Evans would have the option to receive regular medical care and therapy in the surrounding community from the U.A.B. Spain Wallace Rehabilitation Center in Birmingham, Alabama. Compassionate release and treatment outside of a correctional environment is not only the most effective manner of treatment, it would also be the most efficient and least expensive. However, that is not the sole reason for reexamining § 3553(a)(2)(D).

Even if the BOP is able to provide competent care, Evans' condition is "extraordinary" under § 3553(a)(2)(D) and Evans is entitled to "the most effective manner" of treatment. In the Eighth Circuit case of *United States v. Wadena*, 470 F.3d 735 (8th Cir. 2006), the court recognized that while the defendant inmate could

---

[5] Erica Zunkel, *18 U.S.C. § 3553(a)'s Undervalued Sentencing Command: Providing a Federal Criminal Defendant with Rehabilitation, Training, and Treatment in "the Most Effective Manner,"* 9 Notre Dame Journal of Int'l Law 49, 61 (2019).

obtain dialysis treatments and medical care in prison, "[18 U.S.C.] § 3553(a)(2)(D) explicitly states that the effective provision of necessary medical care is an appropriate factor for the district court's consideration in sentencing." *Id.* at 739. Moreover, "[t]he district court had the discretion to decide that it would be more efficient and effective for [the prisoner] to receive treatment from his current healthcare provider." *Id.*

As an inmate, Evans is not "entitled" to the doctor of his choosing and he cannot schedule timely appointments or much-needed treatments and therapy to slow the progression of his deteriorating health and salvage the remaining mobility and strength he has. In this case, the most efficient and effective treatment for Evans is at home where he can be supported by loved ones to enhance his treatment and rehabilitation. Upon release, Mr. Evans would reside with and have the support of his fiancée.

### 2. Time served is sufficient, but not greater than necessary

The remaining § 3553(a) factors also support a reduction of Evans' sentence or are neutral. Reducing Evans' sentence to time served, or to a term of probation or home confinement, would not disserve the factors set out in 18 U.S.C. § 3553(a)(2)(A) (the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" of conviction), 18 U.S.C. § 3553(a)(2)(B) (the need for the sentence imposed "to afford adequate deterrence to criminal conduct"), and 18 U.S.C. § 3553(a)(2)(C) (the need for the sentence imposed "to protect the public from further crimes of the defendant").

The *McGraw* court made the following conclusion which is directly applicable to Mr. Evans:

> McGraw has served much of his sentence while seriously ill and in physical discomfort. This means that his sentence has been significantly more laborious than that served by most inmates. It also means that further incarceration in his condition would be greater than necessary to serve the purposes of the punishment set forth in § 3553(a)(2).

*Id.* at *5.

Mr. Evans expresses deep regret and accepts full responsibility for his actions. He has served over eleven years in prison for his offenses and has been seriously ill for much of that time. The requested reduction in sentence will not minimize the seriousness of Evans' offenses and will provide just punishment and adequate general deterrence.

### C. Evans Is Not A Danger to the Safety of Any Other Person or to the Community.

Evans would pose no danger to the community or other persons. He has no history of violence. After 11 years in prison, Mr. Evans has demonstrated great personal growth and an ability to be a law-abiding citizen. If released, he is approved to receive Social Security Disability and would be able to independently support himself. In addition, Evans has already sought out employment with a family-owned restaurant that he can pursue even with his significantly worsened medical issues and physical condition.

Mr. Evans cannot pose a danger to the safety of others given his extremely limited mobility—he is unable to walk without assistance and has recently suffered debilitating illnesses leaving him bedridden and hospitalized for months. Moreover,

should it choose to grant compassionate release, the court can institute such conditions on Evans' release to alleviate any concerns the government may have. *See McGraw*, 2019 WL 2059488, at *4–5 (imposing lifetime supervision, prohibiting contact with those engaged in criminal activity, and other conditions of release that continued to serve as a sanction and deterrent). Lastly, individuals "released under compassionate release have 3.5% recidivism rate, the lowest among all those formerly incarcerated."[6]

### D. Sentence Reduction is Consistent With § 1B1.13 Policy Statement.

A reduction in Evans' sentence is consistent with the U.S.S.G. § 1B1.13 Policy Statement because Evans is suffering from serious physical and medical conditions that substantially diminish his ability to provide self-care while in a correctional facility environment and these conditions are such that he will not recover. Evans' situation is expressly recognized as an extraordinary and compelling reason to warrant reduction; therefore, Evans' sentence reduction would be consistent with the § 1B1.13 Policy Statement. *See* McGraw, 2019 WL 2059488.

### VI. Conclusion and Statement from Evans

Mr. Evans has multiple serious physical and medical conditions that are progressive in nature, require close monitoring, and result in significant impairments. His ability to provide self-care in prison is substantially diminished. Evans has prepared a personal statement that he asks the Court to consider when

---

[6] https://www.schatz.senate.gov/download/compassionate-release-letter-2017 (last accessed June 14, 2019).

evaluating this renewed motion. (**Exhibit D**). For the foregoing reasons, Evans respectfully requests that the Court his renewed motion.

> Respectfully submitted,
>
> s/ Zachary L. Newland
> Zachary L. Newland
> Senior Litigation Counsel
> **Brandon Sample PLC**
> P.O. Box 250
> Rutland, Vermont 05702
> Phone: (802) 444-4357
> Fax:   (802) 779-9590
> Email: zach@brandonsample.com
> Texas Bar: 24088967
> https://brandonsample.com
>
> *Lead Counsel for Robert Evans*

## **CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with lead counsel for the United States in this matter prior to filing this motion. Counsel for the United States indicated that they are opposed to the Court granting this motion.

> s/ Zachary L. Newland
> Zachary L. Newland

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served this 30th day of September 2019, via CM/ECF on all counsel of record.

> s/ Zachary L. Newland
> Zachary L. Newland

**Defendant's Renewed Motion for Compassionate Release**
**Under18 U.S.C. § 3582(c)(1)(A)**                                                          Page 17 of 17